UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

KRISTIN M. PERRY, et al.,
*Plaintiffs-Appellees*,

v.

DENNIS HOLLINGSWORTH, et al.
*Defendant-Intervenors-Appellees*.

---

Appeal from United States District Court for the Northern District of California
Civil Case No. 09-CV-2292 VRW (Honorable Vaughn R. Walker)

---

## DEFENDANT-INTERVENORS-APPELLANTS' MOTION FOR STAY

---

Andrew P. Pugno
LAW OFFICES OF ANDREW P. PUGNO
101 Parkshore Drive, Suite 100
Folsom, California 95630
(916) 608-3065; (916) 608-3066 Fax

Brian W. Raum
James A. Campbell
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020; (480) 444-0028 Fax

Charles J. Cooper
David H. Thompson
Howard C. Nielson, Jr.
Nicole J. Moss
Jesse Panuccio
Peter A. Patterson
COOPER AND KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600; (202) 220-9601 Fax

*Attorneys for Defendant-Intervenors-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .........................................................................................1

BACKGROUND .........................................................................................2

ARGUMENT ..............................................................................................7

A.    JURISDICTION ...............................................................................7

B.    PROPONENTS ARE LIKELY TO SUCCEED ON THE MERITS..................8

        1.    Disclosure Threatens Core First Amendment Rights ........................11

        2.    The Information At Issue Is Irrelevant.................................14

C.    IRREPARABLE HARM IS CERTAIN IN THE ABSENCE OF A STAY ..........................17

D.    OTHER PARTIES WILL NOT BE SUBSTANTIALLY INJURED BY A STAY ............20

E.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY ....................20

CONCLUSION ........................................................................................20

STATEMENT OF RELATED CASES ................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983) ....................9, 10

*Agster v. Maricopa County*, 422 F.3d 836 (9th Cir. 2005) .....................................19

*Arthur v. Toledo*, 782 F.2d 565 (6th Cir. 1986) .....................................................16

*Australia/E. USA Shipping Conference v. United States*, 537 F. Supp. 807
  (D.D.C. 1982) ...................................................................................................10

*Bates v. City of Little Rock*, 361 U.S. 516 (1960) .....................................................8

*Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) .........................................................17

*Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981), *vacated as moot*,
  458 U.S. 1118 (1982) .........................................................................................9

*Buckley v. American Const. Law Found.*, 525 U.S. 182 (1999) ..............................12

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003).........13

*California Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172 (9th Cir. 2007)......13

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
  556 F.3d 1021 (9th Cir. 2009) ..........................................................................13

*City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105 (C.D. Cal. 2006),
  *vacated,* 581 F.3d 841 (9th Cir. 2009)...............................................................16

*Crawford v. Board of Educ.*, 458 U.S. 527 (1982) .................................................16

*DeGregory v. Attorney Gen. of New Hampshire*, 383 U.S. 825 (1966) .............9, 10

*Dole v. Service Employees Union, AFL-CIO*, 950 F.2d 1456 (9th Cir. 1991) ........10

*Elrod v. Burns*, 427 U.S. 347 (1976) .....................................................................17

*Equality Found. of Greater Cincinnati v. Cincinnati*, 128 F.3d 289
  (6th Cir. 1997) ..................................................................................................16

*ETSI Pipeline Project v. Burlington N., Inc.*, 674 F. Supp. 1489 (D.D.C. 1987)... 10

*Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989) .......12

*FEC v. Machinists Non-Partisan Political League*, 655 F.3d 380
  (D.C. Cir. 1981)...........................................................................................10, 19

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)..............................................14

*First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978)..............................................8, 12

*Gentala v. City of Tucson*, 213 F.3d 1055 (9th Cir. 2000) ......................17

*Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963)..............9

*Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112
(9th Cir. 2008) ................................................................7

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) ........................9

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
No. 05-2164, 2007 U.S. Dist. LEXIS 19475 (D. Kan. Mar. 16, 2007)..............10

*High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563
(9th Cir. 1990) ...............................................................14

*Hunter v. Erickson*, 393 U.S. 385 (1969) ...............................16

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
515 U.S. 557 (1995) ..........................................................11

*In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997) .........................10, 19

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840,
2009 U.S. Dist. LEXIS 66005 (D. Kan. May 28, 2009) .........................10

*International Action Ctr. v. United States,* 207 F.R.D. 1 (D.D.C. 2002) ...............10

*International Soc'y for Krishna Consciousness, Inc. v. Lee*, No. 75-5388,
1985 U.S. Dist. LEXIS 22188 (S.D.N.Y. Feb. 28, 1985) .................................10

*James v. Valtierra*, 402 U.S. 137 (1971) ...............................16

*Jones v. Bates*, 127 F.3d 839 (9th Cir. 1997)...........................17

*Las Vegas v. Foley,* 747 F.2d 1294 (9th Cir. 1984)........................15

*McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334 (1995) ..............9, 11, 12, 13, 19

*Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974) ...................11

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ...................8

*Reitman v. Mulkey*, 387 U.S. 369 (1967)...............................15

*Robert L. v. Superior Court of Orange County*, 69 P.3d 951 (Cal. 2003)..............17

*Romer v. Evans*, 517 U.S. 620 (1996) ...............................16

*S.D. Meyers v. City & County of San Francisco*, 253 F.3d 461 (9th Cir. 2001).....17

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) ..............20

*SASSO v. Union City*, 424 F.2d 291 (9th Cir. 1970) ...................13, 14, 15

*South Dakota Farm Bureau, Inc. v Hazeltine*, 340 F.3d 583 (8th Cir. 2003) .........16

*Strauss v. Horton*, 46 Cal. 4th 364 (Cal. 2009) ......................................17

*United States v. Philip Morris*, 314 F.3d 612 (D.C. Cir. 2003)............................20

*Washington v. Seattle School Dist. No. 1*, 458 U.S. 457 (1982) ............................16

*Watchtower v. Bible & Tract Soc'y of N.Y., Inc. v. Stratton*, 536 U.S. 150 (2002)................................................................................................12

*Wyoming v. United States Dep't of Agriculture*, 208 F.R.D. 449 (D.D.C. 2002) ......................................................................................10

## **Other**

CAL. CONST. art. I, § 7.5............................................................................1

Fed. R. App. P. 8(2)(B)(iii)........................................................................1

Pursuant to Fed. R. App. P. 8(a)(2), Appellants/Petitioners respectfully seek a stay of the discovery authorized by the district court's orders of October 1, 2009 (Doc. 214), and November 11, 2009 (Doc. 252) pending resolution of their appeals or, in the alternative, petitions for writ of mandamus.

## INTRODUCTION

These interlocutory appeals or, in the alternative, petitions for writ of mandamus arise out of discovery orders in a case challenging the constitutionality of Proposition 8 ("Prop 8"), an initiative amendment providing that "[o]nly marriage between a man and a woman is valid or recognized in California." CAL. CONST. art. I, § 7.5. Appellants are a "primarily formed ballot committee" and the "official proponents" of Prop 8 (collectively, "Proponents"), who were permitted to intervene in this case to defend the initiative after the Governor and the Attorney General declined to do so. The district court has directed Proponents to produce to the Plaintiffs copies of internal confidential communications and materials (from one-on-one emails to drafts of campaign ads) relating to Proponents' "advertising or messaging strategy and themes," RR 4 (Doc. 252 at 4),[1] during the Prop 8 campaign—material even Plaintiffs admit is "core political speech and undeniably enti-

_____

[1] Pursuant to Fed. R. App. P. 8(2)(B)(iii), "relevant parts of the record," including all docket entries cited except for memoranda of law, are provided in two volumes of exhibits ("RR") filed concurrently with this motion. Citations to page numbers refer to internal pagination of the volumes of exhibits. Where a memorandum of law is cited, pagination refers to the district court's PACER pagination.

tled to broad First Amendment protection." RR 222 (Doc. 191 at 12).

The district court deemed this nonpublic, confidential information relevant to the intent of the electorate in passing Prop 8 even though the information, by definition, had never been seen by the electorate. If this type of core political speech is not privileged under the speech and associational protections of the First Amendment from ordinary discovery in post-election litigation, then nothing is, and the political process surrounding initiative elections in California, and everywhere else, will be profoundly and permanently chilled. A stay is necessary both to preserve this Court's ability to review this critical First Amendment issue and to prevent irreparable harm to Proponents' core political freedoms.

## BACKGROUND

Plaintiffs filed this suit on May 22, 2009, claiming that Prop 8 violates the Fourteenth Amendment. The district court has imposed an expedited discovery schedule, and a full evidentiary trial is scheduled to commence on January 11, 2010. The scope of discovery in this case has been an issue from the outset. In their initial case management statement, Plaintiffs stated that they would take document and deposition discovery into "Prop 8's genesis, drafting, strategy, objectives, advertising, campaign literature, and [Proponents'] communications with each other, supporters, and donors." RR 630 (Doc. 157 at 12). Proponents objected to this discovery from the start, emphasizing that "the subjective motivations

of voters and other political participants for supporting Proposition 8 are both legally irrelevant and are protected from discovery by the First Amendment." RR 612 (Doc. 159 at 9); *see also* RR 593 (Hr'g of Aug. 19, 2009, Tr. 59). Proponents urged the court, unsuccessfully, "to give us an opportunity to fight this out in briefing to the Court before we get down that road." *Id.* at 594 (60).

Plaintiffs promptly propounded requests that sought all documents relating to Proponents' communications among themselves and with any "third party" relating to Prop 8, whether created before or after the election, as well as wholly internal drafts of, and private editorial comment on, political messaging and strategy communications, and other speech that Proponents chose to withhold from public dissemination. *See* RR 261-67, 290-301 (Docs. 187-3, -5, -6, -7). Plaintiffs have also noticed or served over 20 subpoenas requesting similar documents from Proponents' political consultants and other third parties associated with Proponents in the campaign.

Proponents agreed to produce, without conceding their relevance, all *public*, nonanonymous materials—*e.g.,* television and radio ads, mailings, and "robo" calls – disseminated to the electorate, including materials disseminated to "target" voter groups. Plaintiffs insisted on production of Proponents' internal campaign documents and communications, and Proponents moved for a protective order barring disclosure of such nonpublic confidential materials on the grounds that they were

both irrelevant and privileged under the First Amendment.  *See* Docs. 187, 197.

On October 1, the district court denied the motion in relevant part.  Noting that Proponents sought protection "from responding to any discovery that would reveal political communications as well as identities of individuals affiliated with the Prop 8 campaign whose names have not already been disclosed," the court rejected Proponents' claim that "the First Amendment privilege is applicable to the discovery sought by plaintiffs."  RR 27, 40 (Doc. 214 at 4, 17).  The court also held that nonpublic "information about the strategy and communications of the Prop 8 campaign" is relevant to the electorate's intent in passing Prop 8, even though it was never disseminated to the electorate.  *Id.* at 38 (15).  According to the district court, "communications considered but not sent [to voters] appear to be fair subjects for discovery, as the revision or rejection of a contemplated campaign message may well illuminate what information was actually conveyed to voters."  *Id.* at 39 (16).  The court also held that "some 'nonpublic' communications from proponents to those who assumed a large role in the Prop 8 campaign could be relevant to the voters' understanding of Prop 8 and to the ultimate determination of intent."  *Id.* at 38 (15).  The court thus ruled that Proponents must produce:

- "Communications by and among proponents and their agents … concerning campaign strategy."
- "[C]ommunications by and among proponents and their agents concerning messages to be conveyed to voters, … without regard to whether the messages were actually disseminated or merely contemplated."

- "[C]ommunications by and among proponents with those who assumed a directorial or managerial role in the Prop 8 campaign, like political consultants or ProtectMarriage.com's treasurer and executive committee, among others."
- "[C]ommunications that took place after the election … if they are connected in some way to pre-election messages conveyed to the voters."

*Id.* at 39-40 (16-17).

On October 8, Proponents noticed an appeal and/or petition for mandamus (docketed in this Court as No. 09-17241) seeking review of the October 1 order and moved the district court for a stay of discovery pending resolution of the appeal and/or petition. *See* Docs. 220, 233. On October 23, the district court denied the stay motion. The court reiterated its earlier rejection of "Proponents' blanket assertion of privilege" under the First Amendment, RR 18-22 (Doc. 237 at 8-12), but suggested that it "might yet" find specific documents privileged after *in camera* review. *Id.* at 17 (7). Accordingly, on November 6, Proponents submitted for *in camera* review a 60-document representative sample drawn from the thousands of documents that constitute privileged core political speech. RR 42-44 (Doc. 251). Proponents requested that, if the court concluded the documents must be disclosed, it stay the ruling pending appeal of that order. RR 98 (Doc. 238 at 2).

On November 11, the district court held that Proponents must produce 21 of the 60 documents submitted for *in camera* review. The court reaffirmed its ruling that Proponents are entitled, "at most … to a limited application of the qualified

First Amendment privilege." RR 2 (Doc. 252 at 2). That privilege, the court held, does not "protect the disclosure of campaign communications or the identities of high ranking members of the campaign." *Id*. at 3. And the court held that confidential, nonpublic "communications discussing campaign messaging or advertising strategy, including targeted messaging" are both responsive and "likely to lead to the discovery of admissible evidence to the extent the evidence relates to messages or themes conveyed to California voters or is otherwise likely to lead to this relevant information." *Id*. Though the court did not to reveal the content of assertedly privileged documents, its order did describe the general nature of those documents. *Id*. at 4-6. For example, under the ruling, Proponents must produce:

- Doc 4 [which] discusses edits to a television advertisement….
- Doc 17 [which] discusses voter reaction to a theme in campaign advertising….
- Doc 29 [which] is a draft of a campaign flyer….
- Doc 50 [which] discusses focus group responses to various campaign themes….
- Doc 55 [which] discusses a potential message to be conveyed in response to an opposition advertisement.…
- Doc 58 [which] is a post-election summary of successful themes conveyed to voters.
- Doc 60 [which] is a draft of a television advertisement.

*Id.*

The court did hold that 39 of the 60 documents need not be produced because they said little or nothing about the messages or themes Proponents were considering conveying to voters. *Id*. at 6-9. Though Proponents had requested that

the court stay any requirement that they produce the assertedly privileged documents pending review by this Court, the court below did not do so, directing the parties instead to work out a production schedule that applies court's ruling on the sample to the "hundreds" (indeed, there are thousands) of documents in Proponents' possession. *Id*. at 9.

Proponents have today noticed an appeal of the November 11 order (which, in the alternative, we ask the Court to treat as a petition for writ of mandamus). In a concurrently filed motion, Proponents ask the Court to consolidate this appeal with No. 09-17241.

## ARGUMENT

In deciding whether to issue a stay pending appeal and/or mandamus review, this Court considers: (1) appellant's likelihood of success on the merits; (2) the possibility of irreparable harm absent a stay; (3) the possibility of substantial injury to other parties if a stay is issued; and (4) the public interest. *E.g.*, *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008).

## A.    JURISDICTION

This Court, on October 20, ordered Proponents to show cause why this Court has jurisdiction in No. 09-17241. In a show-cause brief filed concurrently with this motion, Proponents demonstrate that this Court has jurisdiction to review the discovery orders at issue either under the collateral order doctrine or under its

mandamus jurisdiction.

**B.     PROPONENTS ARE LIKELY TO SUCCEED ON THE MERITS**

The orders below require disclosure of nonpublic confidential and/or anonymous speech and associational activity relating to an initiative election—speech that "is at the heart of the First Amendment's protection," and "indispensable to decisionmaking in a democracy." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 776-77 (1978).  Federal courts have long recognized that the fundamental rights of free speech and association in the political realm lie at the core of the First Amendment, that anonymity and confidentiality in the exercise of those rights is vital to their protection, and that compelled disclosure, including through civil discovery, violates those rights.

"Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," and there is a "vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Alabama*, 357 U.S. 449, 460, 462 (1958).  Thus, the Supreme Court has repeatedly held that compelled disclosure of an advocacy association's membership lists would "affect adversely" protected speech and association "in that it may induce members to withdraw from the [a]ssociation and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 462-63; *see also Bates v. City of*

*Little Rock*, 361 U.S. 516, 523 (1960); *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963). More importantly here, the Supreme Court has likewise emphasized that the First Amendment protects not only the confidentiality of political speakers' identities, but the *content* of political speech that they choose not to reveal. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995); *DeGregory v. Attorney Gen. of New Hampshire*, 383 U.S. 825 (1966).

The First Amendment privilege applies both to government requests for information and to requests by private parties in civil litigation. *See, e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *Black Panther Party v. Smith*, 661 F.2d 1243, 1266-67 (D.C. Cir. 1981), *vacated as moot* 458 U.S. 1118 (1982); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983). And the privilege applies regardless of whether it is invoked by a plaintiff or a defendant: voluntary status in the lawsuit does not matter. *E.g., Grandbouche*, 825 F.2d at 1467; *Black Panther*, 661 F.2d at 1266-67. A claim of First Amendment privilege against compelled discovery is "measured against the [requesting party's] need for the information." *Id.* at 1266. "The argument in favor of upholding the claim of privilege will ordinarily grow stronger as the danger to rights of expression and association increases." *Id.* at 1267. The burden is light— only "some probability" of First Amendment harm need exist. *Id.* at 1268. On the disclosure side of the ledger, however, the burden is heavy: to overcome the privi-

lege the requesting party must show that the information requested goes "to the heart of the matter" and is "crucial to the party's case." *Id. See also Coors*, 570 F. Supp. at 209. Courts, including the Supreme Court and this Circuit, have repeatedly held that the *content* of private communications made in connection with political activity are privileged.[2]

Here, the confidential campaign strategy and political messaging information at issue was never disseminated to the electorate and thus can have no relevance whatever to the electorate's intent in passing Prop 8. And compelling its disclosure in this post-election lawsuit will profoundly chill the exercise of speech and associational freedoms in future initiative elections.[3]

---

[2] *See DeGregory*, 383 U.S. at 828 (First Amendment privilege applies to request for "information relating to … the views expressed and ideas advocated at … [an association's] gatherings"); *Dole v. Service Employees Union, AFL-CIO*, 950 F.2d 1456 (9th Cir. 1991) (holding that meeting minutes reflecting discussions of "highly political issues" were prima facie privileged). *See also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 U.S. Dist. LEXIS 22188, at *28 (S.D.N.Y. 1985); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 19475, at *15-20 (D. Kan. 2007); *International Action Ctr. v. United States,* 207 F.R.D. 1, 2-4 (D.D.C. 2002); *In re Motor Fuel Temperature Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 66005, at *34, *45 (D. Kan. 2009); *Wyoming v. United States Dep't of Agriculture*, 208 F.R.D. 449 (D.D.C. 2002); *ETSI Pipeline Project v. Burlington N., Inc.*, 674 F. Supp. 1489 (D.D.C. 1987); *Austlralia/E. USA Shipping Conference v. United States*, 537 F. Supp. 807, 808-10 (D.D.C. 1982).

[3] *See FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 384, 388 (D.C. Cir. 1981) (where "sweeping" subpoena served on political association called for "internal communications" relating to a campaign, "heightened judicial concern" is warranted because "the release of such information … carries with it a real potential for chilling the free exercise of political speech and association).

1. ***Disclosure Threatens Core First Amendment Rights***

In the specific context of a referendum campaign, the Supreme Court has held that the First Amendment protects from compelled disclosure both the content and anonymity of private political speech and associational activity. In *McIntyre*, the Supreme Court struck down a state law that made it illegal to distribute an anonymous leaflet opposing a municipal referendum. Because Ms. McIntyre's distribution of her homemade handbill "occupie[d] the core of the protection afforded by the First Amendment," the Court found that the state law did not pass muster under "exacting scrutiny." 514 U.S. at 346-47. The fact that "this advocacy occurred in the heat of a controversial referendum vote only strengthen[ed] the protection afforded to [it]." *Id.* at 347. The Court emphasized that the First Amendment protects not merely the identity of the speaker, but the *content of any information* that the speaker chooses not to reveal:

> Insofar as the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document, we think the identity of the speaker is *no different from other components of the document's content that the author is free to include or exclude*…. The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit.

*Id.* at 348 (emphasis added) (citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974)); *see also Hurley v. Irish-American Gay, Lesbian and Bisexual Group*

*of Boston*, 515 U.S. 557, 573 (1995) ("Since *all* speech inherently involves choices of what to say and what to leave unsaid, one important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say.") (citation omitted).[4]

There can be no doubt that the state could not have required Ms. McIntyre to publicly disclose drafts of her handbill, edits she had made to it, or the content of her private communications about it with her political confidants during its formulation. The question thus becomes: Would the mere filing of a court challenge to the referendum at issue in *McIntyre* somehow extinguish Ms. McIntyre's right to First Amendment protection? If so, political expression and associational activity in this country will be profoundly and permanently chilled.[5]

---

[4] The court below sought to distinguish *McIntyre* on the ground that Ms. McIntyre "acted independently" while Proponents were "official proponents" of Prop 8. RR 32 (Doc. 214 at 9). But the fact that a speaker in a referendum campaign is not just an individual voter, but also a proponent, does not strip the speaker of First Amendment rights. *See Buckley v. American Const. Law Found.*, 525 U.S. 182, 199 (1999); *First Nat'l Bank v. Bellotti*, 435 U.S. at 777. And "imposing limitations on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 224-25 (1989) (quotation marks omitted).

[5] The court below also suggested that by authoring a post-election article discussing *some* aspects of campaign strategy, Proponent's campaign manager somehow forfeited First Amendment protection for *all* aspects of that strategy. But as *McIntyre* makes clear, the very essence of political speech is that a speaker is "free to include or exclude" whatever it pleases from its public pronouncements. 514 U.S. at 348; *see also Watchtower v. Bible & Tract Soc'y of N.Y., Inc. v. Stratton*, 536 U.S. 150, 167 (2002) ("The fact that circulators revealed their physical

This Court's precedents do not countenance such a result.[6]  The Court has recognized—in the specific context of a referendum—that compelled disclosure "of the private attitudes of the voters … would entail an intolerable invasion of the privacy that must protect an exercise of the franchise."  *SASSO v. Union City*, 424 F.2d 291, 295 (9th Cir. 1970); *see also McIntyre*, 514 U.S. at 343 (explaining that the protected "tradition of anonymity" in speech "is perhaps best exemplified by the secret ballot, the hard-won right to vote one's conscience without fear of retaliation").  The court below has ordered just such an invasion of political privacy, requiring Proponents to reveal their "private attitudes" toward Prop 8 through disclosure of their confidential communications with their political associates, the content of the speech they chose "not to say" to the electorate during the campaign, and their internal political strategy.  And the district court's sole theory of relevance is that this information, which was *never disclosed to the voters*, may somehow bear on whether the voters' "legislative intent" in passing Prop 8 was to further a legitimate purpose or was animated by "a discriminatory motive."  RR 97

---

identities d[oes] not foreclose our consideration of the circulators' interest in maintaining their anonymity.").

[6] This Court has recognized that speech relating to initiative campaigns "unquestionably" is "core political speech," and any burden upon it must be both "narrowly tailored" and justified by "a compelling state interest."  *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1101 (9th Cir. 2003); *see Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1034 (9th Cir. 2009); *California Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1187-90 (9th Cir. 2007).  This applies in the litigation context, as in any other governmental context.

(Doc. 214 at 14).

## 2. *The Information At Issue Is Irrelevant*

The district court held that the internal, confidential political information at issue is relevant to the subjective intent of the electorate in adopting Prop 8, and that the subjective intent of the electorate is relevant to Plaintiffs' equal protection and due process claims, whether reviewed under rational basis or strict scrutiny. This was clear error, both because the subjective intent of the electorate is *not* relevant to Plaintiffs' constitutional claims, and because even if it was, disclosure of Proponents' internal *nonpublic* communications with their political associates would reveal *nothing* about the voters' intent.

Where rational basis scrutiny applies (as it does here[7]), the inquiry is whether the challenged measure rationally serves any conceivable state interest, and "it is entirely irrelevant … whether the conceived reason for the challenged distinction actually motivated the [electorate]." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). But even if strict scrutiny applied, the information at issue here is plainly irrelevant.

In *SASSO*, *supra*, this Court addressed an equal protection challenge to a referendum measure relating to low-income housing. The plaintiffs contended that "the purpose and the result of the referendum were to discriminate racially." 424

---

[7] *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573-74 (9th Cir. 1990).

F.2d at 295.  The Court rejected the notion that "the question of motivation for [a] referendum (apart from a consideration of its effect) is an appropriate one for judicial inquiry."  *Id.*  Pointing to the Supreme Court's analysis of an equal protection challenge to another California fair housing referendum, this Court explained that in *Reitman v. Mulkey*, 387 U.S. 369 (1967), the electorate's "purpose was treated as a relevant consideration," but it "was judged … in terms of ultimate effect and historical context."  *SASSO*, 424 F.2d at 295.  "The only 'conceivable' purpose [of the *Reitman* referendum], judged by wholly objective standards, was to restore [a] right to … private racial discrimination."  *Id.* (citing *Reitman*, 387 U.S. at 381).  But where discrimination is not the only conceivable purpose—where "many environmental and social values are involved"—a determination of "the voters' purpose … would seem to require far more than simple application of objective standards."  *Id.*  And this, the Court explained, is not a legitimate judicial inquiry:  "If the true motive is to be ascertained not through speculation but through a probing of the private attitudes of the voters, the inquiry would entail an intolerable invasion of the privacy that must protect an exercise of the franchise."  *Id.*; *see also Las Vegas v. Foley*, 747 F.2d 1294, 1296-98 (9th Cir. 1984) (deposition of "city officials to determine their 'motives' for enacting [a] zoning ordinance" barred by the First Amendment because it is a "impracticable," "futile," and "hazardous task" fraught with the "impossibility of penetrating into the hearts of men").

Indeed, the Supreme Court, in cases involving discrimination claims in the referendum context, has *never* looked to the type of nonpublic communications sought by Plaintiffs here. *See Hunter v. Erickson*, 393 U.S. 385 (1969); *James v. Valtierra*, 402 U.S. 137 (1971); *Crawford v. Board of Educ.*, 458 U.S. 527 (1982); *Washington v. Seattle School Dist. No. 1*, 458 U.S. 457, 471 (1982); *Romer v. Evans*, 517 U.S. 620 (1996). Notably, the Sixth Circuit has interpreted the Supreme Court's referendum cases (correctly) to mean that a reviewing court "may not even inquire into the electorate's possible actual motivations for adopting a measure via initiative and referendum." *Equality Found. of Greater Cincinnati v. Cincinnati*, 128 F.3d 289, 293 n.4 (6th Cir. 1997); *see also Arthur v. Toledo*, 782 F.2d 565, 573-74 (6th Cir. 1986).[8]

Even where voters' intent is relevant—for example when interpreting am-

---

[8] The district court cited two cases in support of its view of relevance. In *City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105 (C.D. Cal. 2006), a district court looked solely to the text of a challenged referendum to deny an equal protection claim. *Id.* at 1111. And in determining that the referendum was intended to discriminate against interstate commerce, the court looked solely to the referendum text and to the *public* advertising supporting it. *Id.* at 1113-14. So *Los Angeles* hardly supports the regime adopted below. In any event, this Court recently vacated *Los Angeles*. *See* 581 F.3d 841 (9th Cir. Sept. 9, 2009). In the second case, *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003), the Eighth Circuit turned to the state's official ballot materials as the "most compelling" evidence of intent. *Id.* at 594. No First Amendment issue was raised with respect to the nonpublic materials that were cited in the decision. In any event, *SASSO* and *Foley* control in this Circuit and, along with the Sixth Circuit's decision in *Arthur v. Toledo*, 782 F.2d 565, 573 (6th Cir. 1986), are the better reasoned cases.

biguous referendum text—this Court has not considered nonpublic materials such as those sought by plaintiffs here.  Thus, in *Jones v. Bates*, 127 F.3d 839, 860 (9th Cir. 1997), a panel held that "[t]here is nothing, other than the … initiative, the official ballot arguments and the state-prepared materials, to look to in order to discern the people's intent in passing the measure."  And while the en banc Court disagreed with the panel's reading of the electorate's intent, it too looked *only* to publicly disclosed materials.  *Bates v. Jones*, 131 F.3d 843, 846 (9th Cir. 1997).[9]

## C.  IRREPARABLE HARM IS CERTAIN IN THE ABSENCE OF A STAY

The infringement of "First Amendment freedoms . . . unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Gentala v. City of Tucson*, 213 F.3d 1055, 1061 (9th Cir. 2000).  The district court's holding that initiative sponsors and their campaign managers and agents are subject to sweeping discovery into their confidential political strategy and messaging communications will surely and profoundly chill core First Amendment speech and associational activity on future initiative measures of all kinds.  *See* RR 259

---

[9] The California Supreme Court, whose interpretations and methodology this Court looks to when resolving the meaning of a state law, *S.D. Meyers v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001), follows the same approach.  In construing the meaning of ballot measures, "[t]he opinion of drafters or legislators who sponsor an initiative is not relevant since such opinion does not represent the intent of the electorate and we cannot say with assurance that the voters were aware of the drafters' intent."  *Robert L. v. Superior Court of Orange County*, 69 P.3d 951, 957-58 (Cal. 2003).  *See Strauss v. Horton*, 46 Cal. 4th 364, 406, 408-10, 470-72 (Cal. 2009).

(Doc. 187-2) at ¶¶ 9-14; RR 306 (Doc. 187-9) at ¶¶ 6-14; RR 320 (Doc. 187-10) at ¶ 5; RR 579 (Doc. 187-12) at ¶¶ 4-6; *Dole*, 950 F.2d at 1460 (holding that group members' "no longer feeling] free to express their views … is precisely the sort of 'chilling'" the First Amendment privilege is meant to protect against).[10]  And here, the chill would arise not only from the fear of unwanted disclosure of confidential political expression and associations, but also from the severe, extensive, and un-disputed harassment and reprisals that supporters of Prop 8 have been, and con-tinue to be, subjected to.  *See* RR 229-60, 302-586 (Docs. 187-1,-2, -9, -10, -11, -12, -13).  Additionally, a regime that allowed the losers of a referendum to impose on the opposing campaigns' proponents, managers, and agents the onerous cost and burden of reviewing, sorting, and producing tens of thousands of communica-tions would surely make such individuals less willing to participate in such cam-paigns in the future—thus inhibiting the ability to spread one's political message. The discovery regime endorsed below amounts to a tax on core political speech,

---

[10] For example, the consultant hired by Proponents to run the official cam-paign in support of Prop 8 declared that "if the broad discovery demanded in this case is permitted" to go forward it "will significantly suppress the future participa-tion in, and course of, initiative and referendum campaigns" and that "I and my firm will change the way we engage in political speech and campaigning."  RR 309 (Doc. 187-9) at ¶ 9.  Similarly, Mark Jannson, one of the Proponents, declared that "[i]n the future," he would be "less willing to engage in such [internal strategy] communications knowing that [his] private thoughts on how to petition the gov-ernment and [his] private political and moral views may be disclosed simply be-cause of [his] involvement in a ballot initiative campaign."  RR 320 (Doc. 187-10) at ¶¶ 4-5.

and the tax collector is an unsuccessful political rival.

These concerns are especially salient where, as here, the losing side of a controversial initiative campaign seeks complete disclosure of the campaign strategy of the winning side, and it does so while preparing for a political "rematch." *See* RR 311 (Doc. 187-9) at ¶ 13; RR 198 (Doc. 197-7) (Plaintiff-Intervenors' lead attorney was a leader of the anti-Prop 8 political campaign); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) ("Even if a new trial were ordered at which the material found to be privileged was not admissible, it might be impossible to undo the effects of the disclosure …."); *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997) ("Attorneys cannot unlearn what has been disclosed to them in discovery; they are likely to use such material for evidentiary leads, strategy decisions, or the like.").[11]

---

[11] The district court suggested that "a protective order" would "ensure that disclosures through the discovery process [will] not result in adverse effects on the parties or entities or individuals not parties to this litigation." RR 40-41 (Doc. 214 at 17-18). If such orders were sufficient to protect First Amendment freedoms, the Supreme Court and other federal courts would regularly adopt them in cases raising *NAACP*-type claims. In protecting a speaker's disclosure choices, *McIntyre* recognized that decisions about nondisclosure of speech arise not just from fear of harassment and retaliation, but may be motivated simply "by a desire to preserve as much of one's privacy as possible." *McIntyre*, 514 U.S. at 341-42. The harm caused by disclosure of privileged material is the loss of confidentiality in that material, as well as the chill on future speech resulting from loss of confidence that private communications of core political speech will remain confidential. *Machinists*, 655 F.2d at 388 & n.17. A protective order that limits disclosure to Plaintiffs' attorneys, attorneys' staff, and experts—until Plaintiffs introduce the source and content of the information publicly at trial—will hardly be sufficient to guarantee

**D.      OTHER PARTIES WILL NOT BE SUBSTANTIALLY INJURED BY A STAY**

As shown, the nonpublic materials at issue are not relevant to the issues in this case.  And even if this Court were to ultimately find that such documents are relevant and not privileged, the only harm alleged by Plaintiffs from a stay is a delay in the proceedings below.  But "[a] mere assertion of delay does not constitute substantial harm."  *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003).  In any event, to minimize any delay, Proponents respectfully ask that the Court expedite these appeals.

**E.      THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY**

"Courts . . . have consistently recognized the significant public interest in upholding First Amendment principles."  *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002) (listing cases).

## CONCLUSION

For the foregoing reasons, Proponents respectfully ask that this Court issue a stay pending resolution of their appeals and/or petitions for writ of mandamus.

Dated: November 13, 2009                    Respectfully submitted,

<u>/s/ Charles J. Cooper</u>
Charles J. Cooper
Attorney for Appellants

---

that average citizens will not alter or abstain from future political activity for fear of such compelled disclosure of their confidential political speech and associations. *See also* RR 585 (Doc. 187-13) at ¶ 8.

## STATEMENT OF RELATED CASES

In accordance with Ninth Circuit Local Rule 28-2.6, Appellants-Petitioners hereby advise the Court that there is currently a related case pending in this Court. Appeal No. 09-16959 was filed on August 26, 2009, by Campaign for California Families regarding an August 19, 2009 order of the District Court denying their motion to intervene. Appellant/Petitioners here are Appellees in Case No. 09-16959.

Dated: November 13, 2009                                    /s/ Charles J. Cooper
                                                            Charles J. Cooper

| 9th Circuit Case Number(s) | 09-17241 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Nov 13, 2009 | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

See attached Service List.

Signature (use "s/" format) | s/ Jesse Panuccio

**SERVICE LIST**

| **Attorneys for Plaintiff-Intervenor City and County of San Francisco:** | **Attorney for Defendant Registrar-Recorder Dean C. Logan:** |
|---|---|
| Dennis J. Herrera, City Attorney<br>Therese Stewart, Chief Deputy City<br>  Attorney<br>Danny Chou, Chief of Complex and Special<br>  Litigation<br>Vince Chhabria, Deputy City Attorney<br>Erin Bernstein, Deputy City Attorney<br>Christine Van Aken, Deputy City Attorney<br>Mollie M. Lee, Deputy City Attorney<br>CITY AND COUNTY OF SAN<br>  FRANCISCO<br>OFFICE OF THE CITY ATTORNEY<br>1 Dr. Carlton B. Goodlett Place<br>Room 234<br>San Francisco, CA 4102-4682<br>(415) 554-4708<br>Fax: (415) 554-4655<br>Therese.stewart@sf.gov.org | Elizabeth Cortez<br>Judy Whitehurst<br>OFFICE OF COUNTY COUNSEL – COUNTY OF LOS ANGELES<br>500 West Temple St<br>Los Angeles, CA 90012<br>(213) 974-1845<br>JWhitehurst@counsel.lacounty.gov |
| **Attorney for Defendant Clerk-Recorder Patrick O'Connell:**<br><br>Lindsey G. Stern<br>Claude Franklin Kolm<br>COUNTY OF ALAMEDA<br>1221 Oak Street, Suite 450<br>Oakland, CA 94612-4296<br>(510) 272-6710<br>claude.kolm@acgov.org | |